# Karen L.C. Shute v. C. Denny Shute

[607 A.2d 890]

No. 89-449

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 3, 1992

*Robert Halpert* and *C. James Mathis, Law Offices of Kurrle and Halpert,* Montpelier, for Plaintiff-Appellee.

*Leslie* E. *Black* and *Graham Hayes Govoni,* Law Clerk (On the Brief), Johnson, for Defendant-Appellant.

**Johnson, J.** We decide today that the jurisdictional requirements of the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, preempt the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031–1051, when these acts are in conflict. Therefore, unless a child custody decree is in compliance with the Parental Kidnapping Prevention Act, the trial court lacks subject matter jurisdiction to modify or enforce its original decree.

This case arose out of a motion for contempt of a Lamoille Superior Court order granting a divorce to the parties and awarding custody of the minor son to the wife. The motion was filed by the former husband on February 18, 1986, alleging that his former wife had denied him visitation and telephone contact with their son since October 1985. This began two and one-half years of litigation that involved visitation and, eventually, subject matter jurisdiction issues. On May 27, 1988, the husband filed a second motion for contempt and enforcement. On July 22, 1988, the wife filed a motion to dismiss, claiming a lack of subject matter jurisdiction under the UCCJA, 15 V.S.A. § 1032, or, alternatively, that the trial court should decline to exercise jurisdiction because Vermont was an inconvenient forum under 15 V.S.A. § 1036. On August 4, 1989, the Lamoille Superior Court relinquished jurisdiction to the State of Connecticut. The superior court found that Vermont was an inconvenient forum because Connecticut had been the child's home state since 1982 and that Connecticut had closer connections to the child than Vermont. The husband appealed. We affirm the trial court's relinquishment of jurisdiction, but do so on a different ground.

Some history of the original divorce action and later events is necessary. The husband and wife were married in Vermont in 1978. One son was born to the parties in December 1980. The family lived together in Vermont until April 1982. In May 1982, the wife and son moved to Connecticut. The wife filed for divorce in Lamoille Superior Court on February 22, 1983. On March 8, 1984, the trial court issued a Final Order and Decree. At the time the original decree was issued, the trial court made no findings as to subject matter jurisdiction over child custody. The wife's complaint for divorce stated that her residence had been Connecticut since May 1982. The complaint did not state the residence of the child.

The court incorporated the parties' final stipulation, dated March 8, 1984, into the Final Order and Decree. Under the terms of the final stipulation, the parties agreed that the care, custody and control of the minor child would be awarded to the wife, subject to the right of reasonable visitation by the husband. In addition, the parties agreed that the Vermont courts would have continuing jurisdiction of all issues, including custody, support and visitation rights.

On appeal, the husband claims that the trial court violated his constitutional right to due process when it failed to provide him with reasonable or adequate notice and no opportunity to be heard before relinquishing jurisdiction,[1] and that the court abused its discretion when it failed to consider all relevant factors before deciding that Vermont was an inconvenient forum. In light of our holding that the trial court did not have subject matter jurisdiction to modify its original custody decree, we do not reach the precise issues raised by the husband.

This case reflects the jurisdictional complications that can occur when parents, living in different states, seek to modify an original child custody decree by using the courts of two states. Historically, divorce and child custody judgments have not been subject to the full faith and credit mandate in Article IV, § 1, of the United States Constitution and the codification of that man-

---

[1] The trial court gave virtually no notice and opportunity to be heard to the husband before relinquishing jurisdiction. Although we do not condone the trial court's actions, we think the interests of the parties are better served by reaching the jurisdictional issues, so that the custody and visitation issues may be settled by the appropriate jurisdiction.

date in 28 U.S.C. § 1738. By necessity, these judgments have been set apart because they must be modifiable in the rendering state when the best interests of the child require a change. *Kovacs v. Brewer*, 356 U.S. 604, 608 (1958). Therefore, they lack finality and do not fall under the Full Faith and Credit Clause. *In re Forslund*, 123 Vt. 341, 344, 189 A.2d 537, 539 (1963). The result of this lack of recognition and enforcement of custody decrees has been that children were moved to other states by parents who wanted to modify existing orders. *Barndt v. Barndt*, 397 Pa. Super. 321, 326, 580 A.2d 320, 322 (1990).

In response to this confusion, states passed the UCCJA, which provided uniform rules for determining custody jurisdiction. *Meade v. Meade*, 812 F.2d 1473, 1475 (4th Cir. 1987). This remedy was not effective, however, because states adopted variations of the UCCJA and state courts interpreted the uniform provisions differently. *Id.* at 1475–76. Congress found that these inconsistencies resulted in a large and growing number of cases involving custody and visitation disputes and conflicting custody decrees from different states. Parental Kidnapping Prevention Act, Pub. L. No. 96–611, § 7(a)(1) and (2), 94 Stat. 3566, 3568 (1980). To correct these problems, Congress passed the Parental Kidnapping Prevention Act in 1980. 28 U.S.C. § 1738A.

The PKPA established national standards for determining subject matter jurisdiction over custody matters. Under its provisions, jurisdiction is vested in the child's home state. 28 U.S.C. § 1738A(c)(2)(A). The PKPA defines "home state" as

> the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.
>
> . . .

*Id.* § 1738A(b)(4).

▮ The PKPA prohibits a state from modifying a child custody determination made in a sister state when the earlier determination was issued consistent with the provisions of the Act. *Id.* § 1738A(a). If a child has a home state, a child custody determination is consistent with the PKPA only if such state has jurisdiction under its own laws and the state is the home

state of the child on the date of the commencement of the proceedings. *Id.* § 1738A(c)(1) and (2)(A)(i). If the child is absent from a state that would otherwise be the child's home state because of removal or retention by a contestant, the child's absence will not deprive the state of home state jurisdiction. *Id.* § 1738A(c)(1) and (2)(A)(ii).[2] Congress ensured that PKPA jurisdictional requirements would be met by giving continuing and exclusive jurisdiction to a court to modify its previous order only if the court had jurisdiction to determine custody matters in its original proceeding.

 Some state UCCJA laws provide alternate grounds for custody jurisdiction. But the language of the PKPA indicates that Congress intended to preempt the field of custody jurisdiction. *Meade*, 812 F.2d at 1475–76; *Barndt*, 397 Pa. Super. at 333–37, 580 A.2d at 326–27; *Voninski v. Voninski*, 661 S.W.2d 872, 876 (Tenn. Ct. App. 1982). Therefore, under the Supremacy Clause, the PKPA takes precedence over state law when the laws conflict. U.S. Const. art. VI; *Trustees of the Diocese v. State*, 145 Vt. 510, 514, 496 A.2d 151, 153 (1985).

---

[2] If there is no home state jurisdiction under 28 U.S.C. § 1738A(c)(1) and (2)(A)(i) or (ii), one of the following conditions must be met before a court may accept jurisdiction:

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in the State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A),(B),(C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C. § 1738A(c)(1) and (2)(B)–(E).

██ Under Vermont's UCCJA provisions, there is no preference for one jurisdictional ground over another. *Duval v. Duval,* 149 Vt. 506, 513, 546 A.2d 1357, 1361–62 (1988). A trial court may exercise subject matter jurisdiction if Vermont is the child's home state at the time of commencement of the proceedings or if it is in the child's best interest that Vermont have jurisdiction. *Meyer v. Meyer,* 148 Vt. 65, 67, 528 A.2d 749, 750–51 (1987). Because the alternate ground provisions of the Vermont law conflict with the home state preference of the PKPA when it appears that the child has a home state other than Vermont, we now hold that the PKPA preempts the Vermont statutes that conflict with the PKPA. In a custody case, the best interest of the child is no longer controlling if the child has a home state.

██ In this case, the record shows that the Lamoille Superior Court had jurisdiction to entertain the divorce action in 1983. There were no allegations in the complaint as to jurisdiction to determine the custody of the parties' minor son. In fact, Vermont did not have jurisdiction under the PKPA because the child's home state was Connecticut on the date that the divorce action was filed. Later, when the husband initiated a proceeding to enforce the Vermont decree, the wife initiated a second proceeding in Connecticut. Although the Vermont court was not being asked, at that point, to modify the order of a sister state, the question of the enforceability of the original Vermont decree should have been squarely before the court.

First, the trial court should have determined if it had continuing jurisdiction to modify its original decree. For the court to have continuing jurisdiction, the original decree had to be in compliance with the PKPA. 28 U.S.C. § 1738A(d). It was not in compliance because the child had a home state other than Vermont when the wife filed the divorce action in 1983.

Second, the trial court should have determined if it had current jurisdiction under the PKPA. The court had jurisdiction only if: (1) the child lived in Vermont and Vermont was the child's home state; or (2) it appeared that no other state had jurisdiction and it was in the best interests of the child to assume jurisdiction; or (3) another state had declined to exercise jurisdiction in favor of Vermont; or (4) the original decree was in compliance with the PKPA and Vermont continued to be the residence of the child or any contestant.

None of the circumstances outlined existed in this case. Connecticut was, and continues to be, the child's home state; that state has jurisdiction under its own laws and the PKPA. In fact, Connecticut has exercised jurisdiction over the child custody issues in this case. Moreover, the Connecticut court will not be bound by the original Vermont decree under the full faith and credit provisions of the PKPA. 28 U.S.C. § 1738A(a).

The husband argues that, under the PKPA, Vermont has exclusive jurisdiction to enforce and modify the original decree because he remains a resident of Vermont. But the husband's continuing Vermont residence satisfies only part of the PKPA requirement. For a court to have continuing jurisdiction to modify its original custody determination, the original determination must have been made consistently with the PKPA. That was not done in this case.

■ The husband also argues that Vermont has exclusive jurisdiction because the parties agreed that Vermont courts would have continuing jurisdiction to modify the original decree. However, the jurisdictional deficiency cannot be cured by the stipulation of the parties. Subject matter jurisdiction cannot be conferred by agreement or consent of the parties when it is not given by law. *Gerdel v. Gerdel*, 132 Vt. 58, 65, 313 A.2d 8, 12 (1973).

■■ Therefore, the trial court's relinquishment of jurisdiction to Connecticut was proper. Jurisdiction over a divorce is not necessarily coextensive with jurisdiction over custody of children. A trial court must determine if it has jurisdiction to hear and resolve child custody matters. Whether the child has a home state as defined by the Act must be apparent on the face of the complaint. If the home state is not Vermont, then other grounds consistent with the PKPA exceptions to home state jurisdiction must be alleged.

This decision overrules our holding in *Meyer*, 148 Vt. at 67, 528 A.2d at 750–51, to the extent that *Meyer* adopted alternate grounds for subject matter jurisdiction when Vermont is not the home state of the child. It also overrules *Duval*, 149 Vt. at 513, 546 A.2d at 1361–62, to the extent that *Duval* expressed no clear preference for home state jurisdiction when Vermont is not the child's home state.

*Affirmed.*