[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11969
Some of the relevant background facts are not in dispute. The plaintiff (hereinafter the mother) and the defendant (hereafter the father) cohabited together for about eleven years. They are the natural parents of two minor children, Marisol Trujillo, born October 22, 1978, presently sixteen years of age, and Johnny Trujillo, Jr., born March 30, 1982, now twelve years old.
The facts present a tortuous and unhappy background between these two children, the parties and their extended families. The parties were separated on occasions; however, the mother and the two children resided together as a family. There were a number of petitions relative to custody filed in the Bridgeport Probate Court. On February 22, 1991, said probate court granted sole custody and guardianship of the two minor children to the father, subject to a prior order that said minors "not be removed fromthe State of Connecticut" (emphasis added). Although this court found no written order for visitation granted to the mother, it was undisputed that the children visited their mother on a regular basis from February, 1991 to January, 1992. According to the mother's testimony, she did not know the whereabouts of the children for about six months. In the summer of 1992, through information given to her by the Bridgeport school system, she made contact with them in Dover, Delaware, where they were living with their father. From late summer of 1992 to the present, the children visited her during summer vacations and holidays. In July, 1992, the mother filed a habeas corpus action for the return of the children. Because the father was living in Delaware, she was unable to personally serve him and the action was dismissed. In the spring of 1994, the mother became aware that Marisol had become pregnant and had a son at age fifteen out of wedlock. She has been living with her boyfriend's parents for the past year. In the meantime, the mother has been paying child support to the father from February, 1991 to July, 1994 through the Connecticut Support Division. The support orders were vacated in July, 1994 by Magistrate Kochiss-Frankel after a temporary custody order was entered by this court.
On July 14, 1994, the mother filed with this court an Ex Parte Motion for Temporary Custody, a Motion for a Temporary Injunction and a Motion for a Temporary Restraining Order pursuant to Connecticut General Statutes § 46b-93(a)(3)(6) of the Uniform Child Custody Jurisdiction Act ("UCCJA") which provides as follows: CT Page 11970
 (a) The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if: . . .
 (3) the child is physically present in this state and. . . (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. . . .
On the same date, the court issued an Order to Show Cause for the father to appear on August 4, 1994. This court found the father had received notice but failed to appear. The court then granted all three motions without prejudice and ordered a full custody study by Family Relations.
A hearing on a Motion to Dismiss filed by the father was held on October 21, 1994 and through his attorneys, advanced three of the following arguments:
1. The court lacks subject matter jurisdiction under Connecticut General Statutes § 46b-93(a)(3)(b) because no emergency exists;
2. and even if the court had jurisdiction, the best interests of the children should be decided in Delaware, the children's home state;
3. Delaware would be the most convenient forum.
The parties stipulated and agreed that Marisol and her one year old son are living with the father's parents in Delaware and is, therefore, emancipated and the custody of Johnny is the only issue to be decided.
In the excellent briefs filed by the respective attorneys, the mother's attorney conceded the home state of Johnny to be Delaware because he has lived there for over six months.28 U.S.C. § 1738A(c)(2)(A) Parental Kidnapping Prevention Act 1980. In Shute v. Schute, 607 A.2d 890 (1992) Vermont was precluded from modifying its own custody decree because Connecticut was the child's own state at the time of the original CT Page 11971 decree. In the case at hand there is no custody proceeding pending nor have any custody orders been issued in Delaware relative to this child. On February 21, 1991, when the Bridgeport Probate Court granted sole custody and guardianship of this child to the father, that decree was subject to a prior order prohibiting the children from being removed from this state. When the father moved to Delaware in January, 1992, the court finds the father in clear violation of said order. The six month home state requirement cannot be defeated by one parent improperly removing the child from this state. Perez v. Perez III,212 Conn. 63 (1989).
The custody decree issued by the Bridgeport Probate Court on February 22, 1991, granting sole custody and guardianship to the father is binding on both parties pursuant to § 46b-102 of the Connecticut General Statutes. That decree is subject to a prior order that these two minor children not be removed from the State of Connecticut which was equally binding on the father. Connecticut remains the home state. This court retains jurisdiction pursuant to § 46b-93(4)(A)(B). This subsection of the statute provides that when no other state appears to have jurisdiction, this court retains jurisdiction to act in the best interest of the child.
Even though the children concededly have lived in Delaware for over six months, the facts found hereafter give this court jurisdiction under Connecticut General Statutes § 46b-93(A)(3)b, the prior subsection of this statute.
The court has weighed and considered the testimony of both parties, Mr. Rick Pinkowski, the Family Relations officer, and the children, Marisol and Johnny Calderon. The father's testimony related the positive effect of the Dover school system over Bridgeport, that he helps him with his school homework, enrolled him in religion courses and cares for his medical needs. Mr. Pinkowski testified he interviewed the child but did not have sufficient information upon which to base an opinion as to whether or not the child had been neglected or abused.
Marisol, the parties sixteen year old daughter, described a much different lifestyle in the Delaware home during the two and one half years they lived there. She testified of her father's and his wife's drinking habits, the many arguments they had after drinking and the numerous beatings the father inflicted on her brother Johnny in the name of discipline. Her testimony was both CT Page 11972 sad and credible. The children were denied the use of the telephone to call their mother. Marisol stated she heard her brother crying on numerous occasions after the father would discipline him. They both missed their mother and disliked their life in Delaware with both the father and stepmother and the stepmother's children. The court concludes from Marisol's testimony that both children were subject to mistreatment and emotional abuse together with some physical abuse to Johnny during this period that they lived in Delaware.
Johnny testified to being physically struck by his father yet still loves him. He clearly prefers to live with his mother in Bridgeport. The court considered his preference in determining what is in his best interest. A twelve year old child such as Johnny has the intelligence and capability to make an intelligent preference. See § 46b-56(b) of the Connecticut General Statutes.
The court also rejects the father's argument that Delaware would be the most convenient forum. As previously found, there is no custody proceeding pending in Delaware. The child had previously lived in Connecticut for over nine years, attended school here and has many relatives in Bridgeport. After considering all the applicable criteria in § 46b-97(c) (inconvenient forum), § 46b-98 (reprehensible conduct) and § 46b-91 (purposes of UCCJA), the court finds it is in the best interest of the minor child Johnny for the Connecticut court to retain jurisdiction. The motion to dismiss is, therefore, denied.